ROBERT BRIAN BLACK                              7659
Civil Beat Law Center for the Public Interest
700 Bishop Street, Suite 1701
Honolulu, Hawai`i  96813
brian@civilbeatlawcenter.org
Telephone:  (808) 531-4000
Facsimile:  (808) 380-3580

Attorney for Civil Beat Law Center
   for the Public Interest

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| IN RE:  CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST,<br><br>                    Movant. | MISC. NO. 23-235<br>[CR NO. 22-00013-SOM]<br><br>MEMORANDUM IN OPPOSITION TO MOTION FOR STAY OF PROCEEDINGS [DKT. 5] |

## MEMORANDUM IN OPPOSITION TO MOTION FOR
## STAY OF PROCEEDINGS [DKT. 5]

The Government does not want the public to have a *timely* explanation for

why it is justified—if at all—to conceal its advocacy as to sentencing former State

Representative Ty J.K. Cullen for accepting bribes.  The mandamus petition

pending in the Ninth Circuit has no bearing on the instant motion to unseal.

Delaying indefinitely this Court's determination of whether the Government's

motion for downward departure should be unsealed—in whole or in part—violates

the public's right of access.  Civil Beat Law Center for the Public Interest (Law

Center) respectfully requests that the Court deny the Government's motion for stay of proceedings.

The public's qualified right of public access is a right to *timely* access. *Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) ("To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression.") (internal quotations omitted).  The Court sentenced Defendant Cullen on April 6 after granting and relying on the Government's sealed motion.  Contrary to the presumption of open access to court records, the Government's motion—or at least the Court's written findings to explain any sealing—will no longer be timely and relevant after the indeterminately long delay that the Government seeks in its motion.

And the delay is not justified.  The pending mandamus petition does not concern the substantive standards for sealing and unsealing motions for downward departure that are at issue here.  Rather, the mandamus petition seeks to address the harm—in delayed public access and sealing without review by a judge—that is caused by automatic sealing.  Those delays and lack of judicial review before sealing have happened in this case already.  The Law Center's motion to unseal is an effort to mitigate that harm, but the Government's motion for a stay simply would exacerbate the harm with a lengthy further delay and no explanation for the

continued sealing.  No matter how the Ninth Circuit decides the current mandamus petition, the resolution of the motion to unseal will not change.

On January 31, 2023, the Law Center filed a petition for writ of mandamus or other extraordinary writ with the Ninth Circuit.  *Civil Beat Law Ctr. for the Public Interest v. U.S. Dist. Ct.*, No. 23-70023, Dkt. 1-2.[1]  That petition concerned the new Criminal Local Rule that required motions for downward departure, as here, and other categories of court records be filed automatically under seal without the ordinary requirements *before sealing* of notice and opportunity for the public to be heard and entry of specific findings by a judge.  *Id.*  The petition did not challenge the Court's authority to seal motions for downward departure or other records when substantively justified in particular cases.  *Id.* at 29-30 ("Concern about automatic sealing by policy or rule does not mean that every specific proceeding must be public.").  The only requested relief concerned invalidating the automatic sealing provisions that circumvented the procedural mandates that protect the public's presumption of open access.  *Id.* at 9.

If the Ninth Circuit grants the petition, it will only confirm that the Government should not have filed its motion for downward departure as to

---

[1] The Law Center attaches to its memorandum a copy of the petition without the appendix.  The only appendix item was the Criminal Local Rules adopted by the United States District Court for the District of Hawai`i, effective January 1, 2023.

Defendant Cullen under seal on March 24.  But the document will not suddenly become public because the issue presented in the Law Center's pending motion to unseal will still exist; the Court will still need to answer whether sealing in this particular instance is justified.  There is no reason to delay the Court's determination of that separate and distinct issue.

If the Ninth Circuit denies the petition, the Government's initial March 24 filing would be proper under the Criminal Local Rules.  But the Court would still need to determine whether sealing remains justified.  As provided in the Criminal Local Rules:  "If the court determines at any time that any pleading, memorandum, declaration, affidavit, exhibit, or other matter has been improperly sealed or no longer needs to be sealed, the court may order its unsealing . . . ."  Crim. L.R. 5.2(b)(4).  In the analogous context of state court rules that provide for automatic sealing, Chief Judge Derrick K. Watson held that the solution to constitutional concerns is a motion to unseal—as the Law Center filed here—because the public will have an opportunity to be heard and a court will enter appropriate findings. *Civil Beat Law Ctr. for the Public Interest v. Maile*, No. 1:22-CV-386 DKW-KJM, Dkt. 36 at PageID.284.  But to indefinitely stay decision on the issue is not a solution and provides no timely vindication of the public's right of access.  Again, there is no reason to delay the Court's determination of that separate and distinct issue.

In the end, if anyone disagrees with this Court's resolution of the pending motion to unseal the Government's motion for downward departure, that disagreement can be taken to the Ninth Circuit.  But that proceeding before the Court of Appeals will be based on a vastly different record and legal issue from the currently pending mandamus proceeding.

Lastly, the Government argues in essence that, unlike all other cooperator-related filings squarely addressed by the Ninth Circuit, 5K motions are not subject to any right of public access.  Dkt. 5 at PageID.21.  There are multiple problems with that argument.  First, it is not an issue before the Ninth Circuit on the mandamus petition because the mandamus petition is not specific to 5K motions. The petition challenges a rule that provides for automatic sealing of not only 5K filings, but also Rule 35 and 18 U.S.C. § 3553(e) substantial cooperation filings. And the Ninth Circuit has expressly held that the constitutional right of access applies in Rule 35 proceedings.  *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825-26 (9th Cir. 1985).  The Ninth Circuit does not need to address 5K motions separately to decide that the local rule as written cannot stand.  The substantial harm to the public interest from further delays in access through an indeterminate stay cannot be premised on the Government's speculation that the Ninth Circuit might choose to decide an issue that it is not necessary for it to resolve the mandamus petition.

Second, the Government provides no analysis to distinguish the other cooperator-related cases decided by the Ninth Circuit. It ignores the Ninth Circuit's explanation of those cases in *Doe*, when it observed that a report about public access to cooperator information "correctly recogniz[ed] that a presumption of closure for all court filings would not be consistent with our circuit's case law. But nothing in our precedent prevents district courts from adopting some variation of the practices recommended by the CCACM Report, *as long as district courts decide motions to seal or redact on a case-by-case basis*." *United States v. Doe*, 870 F.3d 991, 1002 (9th Cir. 2017) (emphasis added). If the Government wishes to argue that the public has no presumptive right of access—similar to grand jury transcripts—for 5K motions, there are standards to address when the constitutional and common law rights of access apply. But the Government has made no effort to analyze those standards in its motion to stay. The extensive harm of further delay cannot be premised on the Government's passing criticism of the motion to unseal and petition.

Third, contrary to the Government's argument, the motion to unseal does not require the Government to "defend the Court's Local Rule before this Court." Dkt. 5 at PageID.24-25. The motion to unseal requires the Government to explain why the motion remains sealed, not why it was automatically filed under seal pursuant to the Criminal Local Rule 5.2(a)(9). The motion to unseal made no reference to

6

the petition, and the Law Center is not interested in "persuad[ing] this Court that its Local Rule is invalid." Dkt. 5 at PageID.25. As discussed above, the motion to unseal is filed *pursuant to* the new local rules and the authority granted to this Court to unseal any filing if it "no longer needs to be sealed."

Fourth, even if the Government were correct—contrary to the clear implication of Ninth Circuit precedent—that there is no presumptive right of public access to 5K motions, that conclusion does not preclude this Court from ordering public access, or at least explaining the need for continued sealing, as appropriate. For example, the U.S. Supreme Court has recognized that courts may order disclosure of grand jury transcripts. *E.g.*, *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222-23 (1979). And the Ninth Circuit has ordered disclosure of presentence reports when justified. *United States v. Schlette*, 842 F.2d 1574, 1583, *amended*, 854 F.2d 359 (9th Cir. 1988). There is no reason to further delay access if disclosure is justified under even the most forgiving standard.

Fifth, as balanced against the significant harm to the public from continued delays in access, the Government suffers no harm from being required to explain its position regarding sealing and having this Court address whether continued sealing in fact serves some purpose. It undermines public confidence in the Court's disparate sentencing of Defendant Cullen—as compared to former State

Senator Jamie Kalani English—if the Government's motion remains entirely under seal without at least an explanation as to why such sealing is necessary.

The Government seeks delay for the sake of delay.  If anything in the Government's motion for downward departure can presently be disclosed, it should come out now, not months or a year from now.

## CONCLUSION

Based on the foregoing, the Law Center respectfully requests that this Court deny the Government's motion for stay of proceedings [Dkt. 5].

DATED:  Honolulu, Hawai`i, April 11, 2023

/s/ Robert Brian Black
ROBERT BRIAN BLACK
Attorney for Civil Beat Law Center
   for the Public Interest

No. 23-_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE CIVIL BEAT LAW CENTER FOR THE PUBLIC INTEREST, INC.,

Petitioner,

vs.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI`I,

Respondent.

## PETITION FOR WRIT OF MANDAMUS OR OTHER
## EXTRAORDINATY WRIT

ROBERT BRIAN BLACK       7659
Civil Beat Law Center for the Public Interest, Inc.
700 Bishop Street, Suite 1701
Honolulu, Hawai`i  96813
Telephone:  (808) 531-4000
brian@civilbeatlawcenter.org

Attorney for Petitioner

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Petitioner Civil Beat Law Center for the Public Interest, Inc.

states that it has no parent corporation and no publicly held

corporation owns 10% or more of stock in Petitioner.

DATED:  Honolulu, Hawai`i, January 31, 2023

/s/ Robert Brian Black
ROBERT BRIAN BLACK
Attorney for Petitioner

i

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ........................... i

TABLE OF CONTENTS ..................................................... ii

TABLE OF AUTHORITIES ................................................ iv

I.    RELIEF SOUGHT ................................................. 2

II.   ISSUES PRESENTED ............................................. 3

III.  RELEVANT FACTS ............................................... 4

IV.   REASONS FOR WRIT OF MANDAMUS .......................... 6

    A.    Standard of Review: *Bauman* Factors for Writ of Mandamus ("Clearly Erroneous as a Matter of Law") .................... 6

    B.    Standard of Review: Supervisory Authority ("Principles of Right and Justice") ........................................ 9

    C.    The First Amendment Protects Access to Certain Court Records and Mandates Prerequisites to Closure of Those Records. ................................................ 9

    D.    The Common Law Also Protects Access to Certain Court Records and Provides a Strong Presumption in Favor of Access ................................................. 18

    E.    Automatic Sealing Impermissibly Burdens the Public's Right of Access and "Reverse[s] the Presumption of Openness." .......... 19

    F.    The Public Has a Qualified Right of Access to Sentencing Documents. ............................................. 23

    G.    The Public Has a Qualified Right of Access to Court-Ordered Criminal Competency Evaluations. ........................ 27

    H.    The Public Has a Qualified Right of Access to Sentencing Filings Regarding Defendant Cooperation. ................... 30

CONCLUSION...................................................................34

CERTIFICATE OF COMPLIANCE WITH WORD COUNT ..................35

STATEMENT OF RELATED CASES ........................................36

# TABLE OF AUTHORITIES

**Cases**

*Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143 (9th Cir. 1983)....13, 19, 20

*CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823 (9th Cir. 1985)...............3, 4, 23, 30

*Courthouse News Serv. v. Planet*, 947 F.3d 581 (9th Cir. 2020) ...........20, 21

*Del. Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510 (3d Cir. 2013) ........21

*El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147 (1993) ...........................21, 22

*Fernandez v. Meier*, 432 F.2d 426 (9th Cir. 1970) .......................................24

*Frazier v. Heebe*, 482 U.S. 641 (1987) ............................................................9

*Giannini v. Real*, 911 F.2d 354 (9th Cir. 1990) ..............................................9

*Globe Newspaper Co. v. Pokaski*, 868 F.2d 497 (1st Cir. 1989)...........2, 20, 21

*Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596 (1982).................. passim

*Hearst Newspapers, L.L.C. v. Cardenas-Guillen*, 641 F.3d 168
    (5th Cir. 2011) ..........................................................................................23

*In re Copley Press*, 518 F.3d 1022 (9th Cir. 2008) ..................................13, 30

*In re Express-News Corp.*, 695 F.2d 807 (5th Cir. 1982) ..............................21

*In re McClatchy Newspapers Inc.*, 288 F.3d 369 (9th Cir. 2001) ..................7

*In re Providence Journal Co.*, 293 F.3d 1 (1st Cir. 2002) .............................20

*Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462
    (9th Cir. 1990) .................................................................................. passim

*Phoenix Newspapers v. U.S. Dist. Ct.*, 156 F.3d 940 (9th Cir. 1998).. passim

*Presley v Georgia*, 558 U.S. 209 (2010) .......................................................16

*Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501 (1984)...................2, 12, 14, 16

*Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1 (1986).............................. passim

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) ....10, 11, 12, 15

*Seattle Times Co. v. U.S. Dist. Ct.*, 845 F.2d 1513 (9th Cir. 1988) ...............8

*Times Mirror Co. v. United States*, 873 F.2d 1210 (9th Cir. 1989) .............19

*U.S. Indus., Inc. v. U.S. Dist. Ct.*, 345 F.2d 18 (9th Cir. 1965)....................24

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) .......................................................................5

*United States v. Alcantara*, 396 F.3d 189 (2d Cir. 2005)..............................24

*United States v. Biagon*, 510 F.3d 844 (9th Cir. 2007) ......................3, 14, 23

*United States v. Brooklier*, 685 F.2d 1162 (9th Cir. 1982) .......................1, 14

*United States v. Bus. of the Custer Battlefield Museum & Store*,
    658 F.3d 1188 (9th Cir. 2011) ...................................................................18

*United States v. Doe*, 269 Fed. Appx. 626 (9th Cir. 2008) ...................23, 30

*United States v. Doe*, 870 F.3d 991 (9th Cir. 2017) ............................ passim

*United States v. Eppinger*, 49 F.3d 1244 (7th Cir. 1995).......................24, 30

*United States v. Guerrero*, 693 F.3d 990 (9th Cir. 2012) ...................3, 27, 29

*United States v. Index Newspapers LLC*, 766 F.3d 1072
    (9th Cir. 2014) .....................................................................................9, 22

*United States v. Kaczynski*, 154 F.3d 930 (9th Cir. 1998) .................3, 27, 28

*United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013)..................................23

*United States v. Rivera*, 682 F.3d 1223 (9th Cir. 2012) ...............................24

*United States v. Schlette*, 842 F.2d 1574, *amended*, 854 F.2d 359
    (9th Cir. 1988) ................................................................................24, 26, 27

*United States v. Sleugh*, 896 F.3d 1007 (9th Cir. 2018)................................19

*Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289
    (9th Cir. 1986) .................................................................................7, 18

*Waller v. Georgia*, 467 U.S. 39 (1984) .........................................................16

*Westchester Rockland Newspapers v. Leggett*, 399 N.E.2d 518 (1979).........28

**Rules**

Crim. L.R. 5.2 (D. Haw.)................................................................... passim

Crim. L.R. 32.2 (D. Haw.) ............................................................................5

Crim. L.R. 32.1 (D. Alaska) ........................................................................30

Crim. L.R. 49.3 (D. Mont.) ....................................................................27, 30

Crim. L.R. 55.1 (D. Mont.) ........................................................................27

L.R. 79.2 (D.N. Mar. Is.) ............................................................................27

Crim. L.R. 55 (W.D. Wash.) ...................................................................27, 30

Fed. R. Crim. P. 32.......................................................................................25

Fed. R. Crim. P. 32 advisory committee notes (1966) .............................24

Fed. R. Crim. P. 32 advisory committee notes (1974) .............................24

Fed. R. Crim. P. 32 advisory committee notes (1983) .............................25

Fed. R. Crim. P. 32 advisory committee notes (1989) .............................25

Fed. R. Crim. P. 32 advisory committee notes (1994) .............................25

**Other Authorities**

Admin. Office of the U.S. Courts, *Memorandum Regarding Final
Report of the Task Force on Protecting Cooperators* (Mar. 18, 2020).........32

Task Force on Protecting Cooperators, *Final Report of the Task Force
on Protecting Cooperators* (Aug. 2018) ......................................................32

Advisory Comm. on Crim. Rules, *Report of the Advisory Comm. on
Crim. Rules* (Dec. 8, 2017), *in* Comm. on Rules of Practice &
Procedure (Jan. 4, 2018) .............................................................................32

Comm. on Court Admin. & Case Mgmt. of the Judicial Conf.,
*Interim Guidance for Cooperator Information* (June 30, 2016) .................31

Electronic Case Filing Administrative Policies and Procedures
Manual (D. Ariz.)..........................................................................................27

Electronic Case Filing Administrative Policies and Procedures
Manual (S.D. Cal.) ...................................................................................27, 30

Procedures for the Filing of Sealed and Ex Parte Documents for
Criminal Defense Counsel (E.D. Wash.) .................................................30

## PETITION FOR WRIT OF MANDAMUS OR OTHER EXTRAORDINATY WRIT

This Court has long held that the district courts must satisfy "procedural prerequisites to closure" before sealing certain categories of court records. *E.g.*, *United States v. Brooklier*, 685 F.2d 1162, 1167-68 (9th Cir. 1982). For example, when the public has a qualified right of access, "if a court contemplates sealing a document or transcript, it must provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives." *Phoenix Newspapers v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998). Despite this clear rule, on December 16, 2022, Respondent United States District Court for the District of Hawai`i (USDC Hawai`i) adopted local criminal rules that require sealing of certain documents without satisfying any of the procedural prerequisites.

For each of the specific categories of court records subject to automatic sealing that are challenged in this petition, this Court has held that the public has a qualified right of access under the First Amendment to the U.S. Constitution or the common law. Contrary to the "presumption of openness" for these records, the USDC Hawai`i rule provides for blanket sealing without any consideration of, or judicial findings regarding, the individual circumstances of the particular case and possible objections. *See,*

1

*e.g.*, *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984) [*Press-Enter. I*].

This automatic closure severely prejudices the public's right of access by, at a minimum, obstructing access as the public is forced to incur the expense and delay of a motion to unseal.[1]

District courts cannot—as USDC Hawai`i does here—have a local rule of sealing by default that hinders access to court records that are protected by the public's qualified right of access.

## I.  RELIEF SOUGHT

Petitioner Civil Beat Law Center for the Public Interest (Law Center) respectfully requests that the Court invalidate the portions of the new USDC Hawai`i Criminal Local Rule 5.2 that require automatic filing under seal for all sentencing statements, (a)(2); competency evaluations, (a)(8); and sentencing filings regarding a criminal defendant's cooperation, (a)(9).

---

[1] *E.g.*, *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) ("By sealing records in the first instance and requiring those seeking access to initiate an administrative or judicial action, [the challenged statute] also places on the public the burden of overcoming inertia.  Moreover, to the extent that the press must obtain counsel to argue for the release of records, the statute imposes an economic burden on the public.").

2

## II.  ISSUES PRESENTED

1.     Whether, pursuant to USDC Hawai`i Criminal Local Rule 5.2(a)(2), automatic sealing of all sentencing statements—without advance notice or opportunity for the public to be heard and without case-by-case judicial review and specific findings—is contrary to the presumption of openness recognized by this Court in, for example, *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823 (9th Cir. 1985), and *United States v. Biagon*, 510 F.3d 844 (9th Cir. 2007), and thus clearly erroneous as a matter of law or, at a minimum, inconsistent with principles of right and justice.

2.     Whether, pursuant to USDC Hawai`i Criminal Local Rule 5.2(a)(8), automatic sealing of all competency evaluations—without advance notice or opportunity for the public to be heard and without case-by-case judicial review and specific findings—is contrary to the presumption of openness recognized by this Court in, for example, *United States v. Guerrero*, 693 F.3d 990 (9th Cir. 2012), and *United States v. Kaczynski*, 154 F.3d 930 (9th Cir. 1998), and thus clearly erroneous as a matter of law or, at a minimum, inconsistent with principles of right and justice.

3.     Whether, pursuant to USDC Hawai`i Criminal Local Rule 5.2(a)(9), automatic sealing of all sentencing filings regarding defendant

cooperation—without advance notice or opportunity for the public to be
heard and without case-by-case judicial review and specific findings—is
contrary to the presumption of openness recognized by this Court in, for
example, *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823 (9th Cir. 1985), and *United
States v. Doe*, 870 F.3d 991 (9th Cir. 2017), and thus clearly erroneous as a
matter of law or, at a minimum, inconsistent with principles of right and
justice.

## III.   RELEVANT FACTS

On December 16, 2022, USDC Hawai`i adopted Criminal Local Rule
5.2(a) that provides in relevant part:

> The following documents shall be filed under seal
> automatically:
> . . .
> (2)    Presentence Investigation Reports (including
>        drafts) and Sentencing Statements outlining
>        objections or corrections to them;
> . . .
> (8)    competency evaluations;
> (9)    filings setting forth the substantial assistance
>        of Defendant in the investigation or
>        prosecution of another person pursuant to
>        U.S. Sentencing Guidelines § 5K1.1, Fed. R.
>        Crim. P. 35, or 18 U.S.C. § 3553(e)
> . . .
> In all other filings, the parties shall redact sealed
> information obtained from one of the foregoing or rely on the
> public record.

Appx. at 12-13.  Criminal Local Rule 32.2(a) defines a "Sentencing

Statement" to include the parties' advocacy regarding a criminal

defendant's sentencing.[2]  Appx. at 31 ("A 'Sentencing Statement' is a

formal objection to the draft Presentence Report and shall include

objections, if any, concerning factual information, sentencing guideline

ranges and policy statements, and shall address how any objection affects

the proposed guideline calculation.").  Defendants in USDC Hawai`i often

include character letters and extensive position statements on sentencing in

a sentencing statement.  *E.g.*, *United States v. Katherine Kealoha*, No. 17-CR-

582, Dkt. 905; *United States v. Nickie Mali Lum Davis*, No. 20-CR-68, Dkt. 97.[3]

---

[2] The Law Center's petition challenges a default rule sealing sentencing
statements, not presentence investigation reports.  Unlike the probation
office's presentence investigation report, the sentencing statement contains
the *parties'* positions regarding facts, law, and policy that affect sentencing.

[3] District court docket references are D. Haw. unless otherwise specified.
Although these cases predate the latest USDC Hawai`i Criminal Local
Rules, the prior rules instructed parties to file a sentencing statement under
seal, using language similar to the current definition—"objections, if any,
concerning factual information, sentencing guideline ranges and policy
statements which remain in dispute."  The Law Center requests that the
Court take judicial notice of the various District of Hawai`i proceedings
referenced in this petition that provide examples of the sealed filings at
issue here.  *E.g.*, *United States ex rel. Robinson Rancheria Citizens Council v.
Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

## IV.  REASONS FOR WRIT OF MANDAMUS

The USDC Hawai`i rule violates the presumption of openness by automatically sealing court records that are protected by the public's qualified right of access under the First Amendment and common law.  As set forth in this Court's precedent, when the right of access applies, parties should make a motion to seal, and courts should enter findings that justify sealing on a specific case-by-case basis *before* a document is filed under seal.  The USDC Hawai`i rule requiring automatic sealing thus is "clearly erroneous as a matter of law" (mandamus) and inconsistent with "the principles of right and justice" (supervisory authority).

### A.  Standard of Review:  *Bauman* Factors for Writ of Mandamus ("Clearly Erroneous as a Matter of Law")

Mandamus is an "extraordinary remedy" to preserve "the policy against piecemeal review underlying the final judgment rule."  *E.g.*, *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1464 (9th Cir. 1990). This petition—as a review of the USDC Hawai`i local rule—will not require piecemeal review of pending criminal matters.

Nevertheless, the relief sought here fits the typical analysis of mandamus petitions.  This Court balances the *Bauman* factors to assess when mandamus relief is appropriate.  *Id.*

6

1. whether the petitioner has no other adequate means, such as direct appeal, to obtain the requested relief;
2. whether the petitioner will be damaged or prejudiced in a way not correctable on appeal;
3. whether the district court's order is clearly erroneous as a matter of law;
4. whether the district court's order is an oft-repeated error or manifests a persistent disregard of the federal rules; and
5. whether the district court's order raises new and important problems or issues of first impression.

*Id.* Not all factors need apply; "the factors are not intended to 'supplant reasoned and independent analysis' but rather 'serve only as a useful starting point, an analytic framework for determinations regarding the propriety of mandamus relief.'" *Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1292 & n.3 (9th Cir. 1986).

The presence of the first two factors is well established when—as here—the public is denied easy and timely access to criminal court records. *Oregonian Publ'g*, 920 F.2d at 1465 ("without immediate review, the press will face a serious injury to an important first amendment right."); *accord In re McClatchy Newspapers Inc.*, 288 F.3d 369, 373 (9th Cir. 2001); *Valley Broadcasting*, 798 F.2d at 1292 ("because KVBC-TV seeks to obtain the tapes for contemporaneous broadcast, when presumably they will pack the greatest punch, delay will prejudice its application 'in a way not correctable on appeal.'"); *Phoenix Newspapers v. U.S. Dist. Ct.*, 156 F.3d 940,

952 (9th Cir. 1998) ("the Press cannot win redress on appeal for its injury from the delay in the release of the hearing transcript."); *Seattle Times Co. v. U.S. Dist. Ct.*, 845 F.2d 1513, 1515 (9th Cir. 1988).  As to the fourth factor, the USDC Hawai`i prior local rules and practice—now consolidated and codified in Criminal Local Rule 5.2—similarly resulted in frequent automatic sealing of records, delaying public access and necessitating motions to unseal.[4]  As to the fifth factor, although this Court has held that a qualified right of public access attaches to these specific categories of records, the Law Center is not aware of any Ninth Circuit precedent addressing a local rule as here requiring automatic sealing of such records without regard for the "procedural prerequisites to closure"—a matter of first impression.

_____

[4] In each of these matters, after the public incurred the expense and delay of filing a motion, the district court ordered the document unsealed entirely or, at least, with redactions.  *In re Civil Beat Law Center for the Public Interest*, No. 22-MC-457 (motion to unseal, *inter alia*, sentencing statement); *In re Civil Beat Law Center for the Public Interest*, No. 22-MC-431 (motion to unseal sentencing statement and exhibits); *In re Civil Beat Law Center for the Public Interest*, No. 22-MC-276 (motion to unseal sentencing statement); *In re Civil Beat Law Center for the Public Interest*, No. 22-MC-275 (motion to unseal sentencing statement); *In re Civil Beat Law Center for the Public Interest*, No. 22-MC-124 (motion to unseal 5K1.1 motion); *In re Civil Beat Law Center for the Public Interest*, No. 19-MC-282 (motion to unseal, *inter alia*, competency evaluation); *In re Motion to Unseal Court Records*, No. 18-MC-477 (motion to unseal, *inter alia*, competency evaluation).

"Thus, the key factor to be considered is whether the district court's order is clearly erroneous as a matter of law." *Oregonian Publ'g*, 920 F.2d at 1465. When the public's qualified right of access attaches, the failure to follow the procedural prerequisites to closure—in all criminal cases by default rule—is clearly erroneous as a matter of law.

### B. Standard of Review: Supervisory Authority ("Principles of Right and Justice")

"A district court's discretion in promulgating local rules is not, however, without limits." *Frazier v. Heebe*, 482 U.S. 641, 645 (1987). As an exercise of its inherent supervisory authority, this Court has recognized that it has a role to ensure that local district court rules are consistent with principles of "right and justice," following the Supreme Court's lead in *Frazier*. *E.g.*, *Giannini v. Real*, 911 F.2d 354, 361 (9th Cir. 1990). When the public's qualified right of access attaches, the failure to follow the procedural prerequisites to closure—in all criminal cases by default rule— does not satisfy the "right and justice" standard.

### C. The First Amendment Protects Access to Certain Court Records and Mandates Prerequisites to Closure of Those Records.

"America has a long history of distrust for secret proceedings." *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1084 (9th Cir. 2014).

9

The tradition of public access to criminal proceedings "can be traced back beyond reliable historical records." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564-68 (1980) (plurality opinion). "[One] of the most conspicuous features of English justice, that all judicial trials are held in open court, to which the public have free access, . . . appears to have been the rule in England from time immemorial." *Id.* at 566-67 (alterations in original). "[T]he historical evidence demonstrates conclusively that at the time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open. This is no quirk of history; rather, it has long been recognized as an indispensable attribute of an Anglo-American trial." *Id.* at 569.

As a consequence, "[a] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 604 (1982); *Richmond Newspapers*, 448 U.S. at 575 (plurality opinion) (the freedoms in the First Amendment "share a common core purpose of assuring freedom of communication on matters relating to the functioning of government"). Thus, to the extent that the constitution guarantees a qualified right of public access, "it is to ensure that this constitutionally protected 'discussion of governmental affairs' is

an informed one." *Globe Newspaper*, 457 U.S. at 605; *Richmond Newspapers*,
448 U.S. at 587 (Brennan, J., concurring) ("Implicit in this structural role is
not only the principle that debate on public issues should be uninhibited,
robust, and wide-open, but also the antecedent assumption that valuable
public debate—as well as other civic behavior—must be informed.").
Without such public access, "important aspects of freedom of speech and
'of the press could be eviscerated.'" *Richmond Newspapers*, 448 U.S. at 580
(plurality opinion).

"By offering such protection, the First Amendment serves to ensure
that the individual citizen can effectively participate in and contribute to
our republican system of self-government." *Globe Newspaper*, 457 U.S. at
604. "[T]he public has an intense need and a deserved right to know about
the administration of justice in general; about the prosecution of local
crimes in particular; about the conduct of the judge, the prosecutor, defense
counsel, police officers, other public servants, and all the actors in the
judicial arena; and about the trial itself." *Richmond Newspapers*, 448 U.S. at
604 (Blackmun, J., concurring). "[Openness] gave assurance that the
proceedings were conducted fairly to all concerned, and it discouraged
perjury, the misconduct of participants, and decisions based on secret bias

or partiality." *Id.* at 569 (plurality opinion); *accord Press-Enter. I*, 464 U.S. 501, 508 (1984) ("[T]he sure knowledge that *anyone* is free to attend gives assurance that established procedures are being followed and that deviations will become known.").

  "A result considered untoward may undermine public confidence, and where the trial has been concealed from public view, an unexpected outcome can cause a reaction that the system, at best, has failed, and, at worst, has been corrupted." *Richmond Newspapers*, 448 U.S. at 571 (plurality opinion); *Globe Newspaper*, 457 U.S. at 606 ("[P]ublic access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process."); *Press-Enter. I*, 464 U.S. 501, 508 (1984) ("Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system."). "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers*, 448 U.S. at 572 (plurality opinion).

12

The same First Amendment standards for closing courtroom proceedings apply to sealing documents for criminal pretrial proceedings.[5] *E.g.*, *Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983). As this Court observed:

> There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them. Indeed, the two principal justifications for the first amendment right of access to criminal proceedings apply, in general, to pretrial documents. Those two justifications are: "first, the criminal trial historically has been open to the press and general public," and "second, the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole." There can be little dispute that the press and public have historically had a common law right of access to most pretrial documents — though not to some, such as transcripts of grand jury proceedings. . . . We thus find that the public and press have a first amendment right of access to pretrial documents in general.

---

[5] Whether the qualified right of public access under the First Amendment attaches to a particular type of proceeding must be analyzed under the "experience and logic" standard: whether "the place and process have historically been open to the press and the general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 8 (1986) [*Press-Enter. II*]. A proceeding must meet at least one prong of the standard. *In re Copley Press*, 518 F.3d 1022, 1026 (9th Cir. 2008) ("we consider both 'historical experience' and 'logic', though logic alone, even without experience, may be enough to establish the [public's qualified First Amendment right of access to court records]"). For the proceedings at issue in this petition—as detailed below—this Court has already held that the experience and logic standard is met.

*Id.* (citations omitted).

To preserve societal values reflected in the First Amendment, the U.S. Supreme Court held that "[c]losed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enter. I*, 464 U.S. at 509. "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510; *accord Globe Newspaper*, 457 U.S. at 606-07.

When the First Amendment right of access applies, there are "procedural prerequisites to closure" that must be met in order to preserve the presumption of openness. *United States v. Brooklier*, 685 F.2d 1162, 1167-68 (9th Cir. 1982). First, the public must be provided notice and an opportunity to be heard before closure occurs. *Globe Newspaper*, 457 U.S. at 609 n.25 ("Of course, for a case-by-case approach to be meaningful, representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion.'"); *United States v. Biagon*, 510 F.3d 844, 848 (9th Cir. 2007) (oral motion at hearing insufficient); *Phoenix Newspapers v. U.S. Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998) ("[I]f a court contemplates sealing a document or transcript, it must

provide sufficient notice to the public and press to afford them the opportunity to object or offer alternatives."); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1466 (9th Cir. 1990) ("those excluded from the proceeding must be afforded a reasonable opportunity to state their objections"); *Brooklier*, 685 F.2d at 1168. This required procedure ensures that the public has a "meaningful opportunity to address sealing the [documents] on the merits, or to discuss with the court viable alter[n]atives." *Phoenix Newspapers*, 156 F.3d at 949.

Second, the trial court must make "findings to support closure." *Richmond Newspapers*, 448 U.S. at 580; *accord Press-Enter. II*, 478 U.S. at 14 ("the proceedings cannot be closed unless specific, on the record findings are made"). The district court must make "specific factual findings" that: "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no more alternatives to closure that would adequately protect the compelling interest." *Phoenix Newspapers*, 156 F.3d at 949.

Findings must be "specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. I,*

15

464 U.S. at 510. "The court may not base its decision on conclusory assertions alone . . . ." *Oregonian Publ'g*, 920 F.2d at 1466 & 1467 n.1 (findings insufficient because general concern about danger to defendant as a cooperator with no factual basis and finding on alternatives did not discuss options); *accord Press-Enter. I*, 464 U.S. at 511-13 (generic concerns about fair trial and juror privacy and no discussion of alternatives); *Phoenix Newspapers*, 156 F.3d at 950-51 ("generalized concerns" about fair trial, compromising an investigation, and juror security and only general finding on alternatives without discussing options); *see also Presley v Georgia*, 558 U.S. 209, 214-15 (2010) (per curiam) (applying *Press-Enterprise* standard to parallel Sixth Amendment right, findings insufficient because failure to consider alternatives; concern over adequacy of finding about "generic risk" of potential improper juror communications); *Waller v. Georgia*, 467 U.S. 39, 48-49 (1984) (parallel Sixth Amendment right, "broad and general" concerns about third party privacy and no discussion of alternatives). "It is the burden of the party seeking closure . . . to present facts supporting closure and to demonstrate that available alternatives will not protect his [or her] rights." *Oregonian Publ'g*, 920 F.2d at 1467.

16

Without these procedural protections, the public's qualified right of access under the First Amendment is an empty guarantee.  If parties decide what is sealed—without advance notice to the public or judicial review— secrecy dominates.  Openness then only occurs when the public has the resources to litigate the issue; it is no longer presumed.  *E.g.*, *supra* note 4.

> The procedural and substantive safeguards described in *Oregonian* and *Brooklier* are not mere punctilios, to be observed when convenient.  They provide the essential, indeed only, means by which the public's voice can be heard.  All too often, parties to the litigation are either indifferent or antipathetic to disclosure requests.  This is to be expected:  it is not their charge to represent the rights of others.  However, balancing interests cannot be performed in a vacuum.  Thus, providing the public notice and an opportunity to be heard ensures that the trial court will have a true opportunity to weigh the legitimate concerns of all those affected by a closure decision.  Similarly, entry of specific findings allows fair assessment of the trial judge's reasoning by the public and the appellate courts, enhancing trust in the judicial process and minimizing fear that justice is being administered clandestinely.

*Phoenix Newspapers*, 156 F.3d at 951.

17

**D.** **The Common Law Also Protects Access to Certain Court Records and Provides a Strong Presumption in Favor of Access.**

When the common law right of access attaches, "a strong presumption in favor of access is the starting point."[6] *United States v. Bus. of the Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011); *accord Valley Broadcasting Co. v. U.S. Dist. Ct.*, 798 F.2d 1289, 1293-94 (9th Cir. 1986). The "party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by . . . articulating compelling reasons . . . that outweigh the general history of access and the public policies favoring disclosure." *Custer Battlefield*, 658 F.3d at 1194-95. A court presented with a motion to seal must balance the competing interests and "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1195. "[T]he court may not restrict access to the documents without articulating both a compelling reason and a factual basis for its ruling." *Id.* at 1196.

---

[6] Whether the common law right of access attaches is analyzed by asking if the records have "traditionally been kept secret for important policy reasons." *Custer Battlefield*, 658 F.3d at 1193. For the proceedings here—as detailed below—this Court has already held that the right of access applies under either the First Amendment or common law.

### E. Automatic Sealing Impermissibly Burdens the Public's Right of Access and "Reverse[s] the Presumption of Openness."

Courts cannot categorically seal court records by rule when the public has a qualified right of access under the First Amendment or common law. If there is a categorical basis to keep records secret, that is determined by the threshold question of whether the qualified right of access attaches. *E.g.*, *United States v. Sleugh*, 896 F.3d 1007, 1014 (9th Cir. 2018) (no First Amendment or common law qualified right of access to criminal defendant's subpoena applications under Fed. R. Crim. P. 17); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1221 (9th Cir. 1989) (pre-indictment search warrants when there is an ongoing investigation). Once the "strong presumption in favor of access" applies, however, more nuance is required. Courts must consider less restrictive alternatives or balance the competing interests, and at a minimum, the district court must make specific factual findings that justify the sealing. None of that happens when records are automatically sealed by default rule.

As this Court explained in *Associated Press*, automatic sealing delays access and thus improperly burdens the public's right of access.

> Moreover, the court's orders that seal each and every document filed impermissibly reverse the "presumption of openness" that characterizes criminal proceedings "under our system of

19

> justice." It is irrelevant that some of these pretrial documents
> might only be under seal for, at a minimum, 48 hours under the
> March 22, 1983 order. The effect of the order is a total restraint
> on the public's first amendment right of access even though the
> restraint is limited in time.

*Associated Press v. U.S. Dist. Ct.*, 705 F.2d 1143, 1147 (9th Cir. 1983) (citations

omitted); *accord Courthouse News Serv. v. Planet*, 947 F.3d 581, 594 (9th Cir.

2020) ("To delay or postpone disclosure undermines the benefit of public

scrutiny and may have the same result as complete suppression.") (internal

quotations omitted); *see also In re Providence Journal Co.*, 293 F.3d 1, 11 (1st

Cir. 2002) ("Whether viewed as a restriction on access or as a practical

inconvenience, this protocol reverses the constitutional presumption of

public access to documents submitted in conjunction with criminal

proceedings."); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 506-08 (1st Cir.

1989) ("delay burdens the First Amendment"). It does not matter that a

compelling interest may exist in some instances or that alternatives to

closure may be cumbersome. *Press-Enter. II*, 478 U.S. 1, 15 (1986) ("But this

risk of prejudice does not automatically justify refusing public access to

hearings on every motion to suppress.").

 Courts consistently strike down any statute or rule that automatically

closes court proceedings in a manner that fails to comply with standards of

access. *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 609, 610 n.27 (1982) (holding that "a mandatory rule [that barred public access to all court testimony by minor victims of sex crimes], requiring no particularized determinations in individual cases, is unconstitutional"); *accord El Vocero de P.R. v. Puerto Rico*, 508 U.S. 147, 150-51 (1993) (state court rule unconstitutional for requiring secrecy in criminal preliminary hearings); *Press-Enter. II*, 478 U.S. at 14-15 (state statute sealing preliminary hearings unconstitutional for applying reasonable likelihood, not substantial probability standard, and for not considering alternatives); *Courthouse News*, 947 F.3d at 596-98 (affirming district court striking as unconstitutional a court policy to deny access to civil complaints pending clerk review); *see also Del. Coal. for Open Gov't, Inc. v. Strine*, 733 F.3d 510, 520-21 (3d Cir. 2013) (state court rule unconstitutional for mandating confidentiality for government-sponsored arbitrations); *Pokaski*, 868 F.2d at 509 (state statute unconstitutional for sealing all criminal cases that end in "not guilty" or "no probable cause" finding); *In re Express-News Corp.*, 695 F.2d 807, 809-11 (5th Cir. 1982) (local district rule unconstitutional for prohibiting public access to jurors regarding deliberations or verdict without leave of the court); *cf. United States v. Doe*, 870 F.3d 991, 1002 (9th

21

Cir. 2017) ("a presumption of closure for all court filings [regarding cooperation] would not be consistent with our circuit's case law"). Any compelling interest "could be served just as well by requiring the trial court to determine on a case-by-case basis whether the State's [asserted interest] necessitates closure." *Globe Newspaper*, 447 U.S. at 609.

Concern about automatic sealing by policy or rule does not mean that every specific proceeding must be public. There may be reasons common to particular proceedings (*e.g.*, testimony of child victims of sex crimes) that often justify closure. But when there is a presumption of public access by law, a court must address the issue on a case-by-case basis before sealing. *E.g.*, *El Vocero de P.R.*, 508 U.S. at 151 ("this concern can and must be addressed on a case-by-case basis"); *Globe Newspaper*, 457 U.S. at 608 ("A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim."); *Doe*, 870 F.3d at 1002 ("nothing in our precedent prevents district courts from adopting some variation of the practices recommended by the CCACM Report, as long as district courts decide motions to seal or redact on a case-by-case basis."); *United States v. Index Newspapers LLC*, 766 F.3d 1072, 1095 (9th Cir. 2014) ("These considerations are not exhaustive, but are examples of the

considerations that may be relevant when conducting the necessary case-by-case balancing of interests.").

Requiring the public to hire counsel and ask permission through a motion to unseal every time is fundamentally inconsistent with the well-established strong presumption in favor of access. *E.g.*, *supra* note 4.

### F. The Public Has a Qualified Right of Access to Sentencing Documents.

Criminal Local Rule 5.2(a)(2) automatically seals any "sentencing statement"—defined as an objection to facts, guideline ranges, or sentencing policy in the presentence investigation report.[7]  Appx. at 12-13, 31.  This Court has long recognized that sentencing-related proceedings are subject to a qualified right of public access. *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985); *accord United States v. Biagon*, 510 F.3d 844, 848 (9th Cir. 2007); *United States v. Doe*, 269 Fed. Appx. 626, 626 (9th Cir. 2008); *see also, e.g.*, *United States v. Harris*, 890 F.3d 480, 492 (4th Cir. 2018); *United States v. Kravetz*, 706 F.3d 47, 56-59 (1st Cir. 2013); *Hearst Newspapers, L.L.C. v. Cardenas-Guillen*, 641 F.3d 168, 176-81 (5th Cir. 2011); *United States v.*

---

[7] The Law Center has not identified any other district in the Ninth Circuit that provides for automatic sealing of parties' responses to the presentence investigation report.

*Alcantara*, 396 F.3d 189, 196-99 (2d Cir. 2005); *United States v. Eppinger*, 49 F.3d 1244, 1252-53 (7th Cir. 1995); *cf. United States v. Rivera*, 682 F.3d 1223, 1228 (9th Cir. 2012) (under parallel Sixth Amendment standard).

This petition challenges automatic sealing for sentencing advocacy, not sealing presentence investigation reports. But public access does not change simply because the parties' filings respond to the presentence investigation report. *See U.S. Indus., Inc. v. U.S. Dist. Ct.*, 345 F.2d 18, 22-23 (9th Cir. 1965) (pre-*Press Enterprise* case requiring unsealing of sentencing statement sent to probation officer with redactions to protect the identity of grand jury witnesses). Nothing in Fed. R. Crim. P. 32, nor 18 U.S.C. § 3552, requires secrecy for the contents of presentence investigation reports. *United States v. Schlette*, 842 F.2d 1574, 1578-79, *amended*, 854 F.2d 359 (9th Cir. 1988). Historically, presentence investigation reports were kept confidential even from the defendant and included only the probation officer's independent assessment of sentencing issues. *E.g.*, *Fernandez v. Meier*, 432 F.2d 426, 427 (9th Cir. 1970) (defendant has no constitutional right to access presentence investigation report); *see also* Fed. R. Crim. P. 32 advisory committee notes (1966) (permitting disclosure to defendant), (1974) (encouraging, absent compelling reasons, disclosure to defendant to

24

promote more accurate reports), (1983) (requiring disclosure within reasonable time to defendant and judicial resolution of material factual disputes), (1989) (requiring disclosure within 10 days of sentencing and no longer requiring defendant to return the report), (1994) (timing for disclosure and objections).

As Federal Rule of Criminal Procedure 32 has evolved, a measure of sentencing advocacy has shifted from the sentencing hearing to the process for objections to presentence investigation reports. Fed. R. Crim. P. 32(e), (f). As explained by the Advisory Committee, the objections process "is intended to maximize judicial economy by providing for more orderly sentencing hearings while also providing fair opportunity for both parties to review, object to, and comment upon, the probation officer's report in advance of the sentencing hearing." Fed. R. Crim. P. 32 advisory committee notes (1994). But judicial economy does not justify making confidential the parties' advocacy about an appropriate sentence when that process has traditionally been public.[8]

---

[8] Otherwise, parties will file an extensive "sentencing statement" responding to the presentence investigation report—with lengthy analysis of facts and law and character reference letters—but file a cursory "sentencing memorandum" because the former is automatically sealed and the latter is public. *Compare, e.g.*, *United States v. Nickie Mali Lum Davis*, No.

As this Court observed in ordering disclosure of a presentence

investigation report, there is a

> legitimate interest in explaining to a concerned public the
> means by which sentencing decisions are made.  Making the
> public aware of how the criminal justice system functions
> surely serves the ends of justice.  Publishing sufficient
> information to allow the public to join in a dialogue about the
> courts and the treatment of defendants can only have a positive
> impact on the public's perception of our judicial system.

*Schlette*, 842 F.2d at 1583.  The *Schlette* court rejected arguments under the

common law for the confidentiality of presentence investigation reports

based on "sources of confidential information" drying up, preventing

retaliation for information disclosed, and detrimental impact on the quality

of the presentence reports—stating that such arguments have "been proven

empirically false."  *Id.* at 1580.

The public has a qualified right of public access to advocacy by the

government or a defendant concerning an appropriate sentence, including

relevant facts and law.  No obvious compelling interest justifies universal

sealing of all sentencing statements.  And alternatives to possible limited

concerns exist—*e.g.*, case-by-case review, redacting particularly sensitive

---

20-CR-68, Dkt. 107 (72-page "sentencing statement" with character letters
originally filed under seal as Dkt. 97), *with* Dkt. 138 (19-page publicly filed
"sentencing memorandum").

information, or providing access only in the courthouse (not through PACER).  By automatically sealing sentencing statements without any notice, opportunity for the public to object, or judicial findings to justify the sealing or consider alternatives, Criminal Local Rule 5.2(a)(2) is clearly erroneous as a matter of law and inconsistent with principles of right and justice.

### G.    The Public Has a Qualified Right of Access to Court-Ordered Criminal Competency Evaluations.

Criminal Local Rule 5.2(a)(8) automatically seals "competency evaluations."[9]  Appx. at 12.  This Court has recognized that competency-related proceedings are subject to a qualified right of public access.  *United States v. Guerrero*, 693 F.3d 990, 1000-02 (9th Cir. 2012) (First Amendment); *United States v. Kaczynski*, 154 F.3d 930, 931-32 (9th Cir. 1998) (common law); *cf. Schlette*, 842 F.2d at 1583-84 & n.5 (common law right to

---

[9] The District of Montana, District of Northern Marianas Islands, and Western District of Washington also have local rules that require competency evaluations be automatically sealed.  D. Mont. Crim. L.R. 49.3(a)(2)(C), 55.1(d)(4); D.N. Mar. Is. L.R. 79.2(b)(1)(C); W.D. Wash. Crim. L.R. 55(b)(6).  The District of Arizona and Southern District of California have filing procedures (not local rules) that appear to deny public access to competency evaluations.  D. Ariz. Electronic Case Filing Administrative Policies and Procedures Manual, § II.Q at 21 No. 7 (exceptions to electronic filing); S.D. Cal. Electronic Case Filing Administrative Policies and Procedures Manual, § 1.h(g) at 6 & § 2.p(7) at 19.

"psychiatric report" prepared for probation office as part of presentence investigation report).

Competency proceedings are a cornerstone to the fair administration of justice, and if dispositive of criminal charges, those proceedings may be the only opportunity for public insight into the "workings of the criminal justice system" for the case. *Kaczynski*, 154 F.3d at 931-32 (disclosure of competency evaluation "would serve the ends of justice by informing the public about the court's competency determination and [the defendant's] motivation for committing [his] crimes"); *see also Press-Enter. II*, 478 U.S. 1, 12 (1986) (emphasizing the importance of public access to preliminary hearings because those proceedings are "often the final and most important step in the criminal proceeding")[10]; *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Just as there exists a first amendment right of access in the context of criminal trials, it should exist in the context of the means by which most criminal prosecutions are resolved, the plea agreement." (citations omitted)).

---

[10] In reviewing the tradition of public access to pretrial criminal proceedings across the country, the Supreme Court cited with approval *Westchester Rockland Newspapers v. Leggett*, 399 N.E.2d 518 (1979), which held that the public has a qualified right to attend criminal competency proceedings. *Press-Enter. II*, 478 U.S. at 10 & n.3.

> [C]ompetency hearings may determine the critical question of
> whether a criminal defendant will proceed to trial.  A court's
> decision on whether a defendant is able to understand the
> nature of the proceedings against him and whether he is able to
> assist counsel in his defense is a critical part of the criminal
> process.  Allowing public access to a competency hearing
> permits the public to view and read about the criminal justice
> process and ensure that the proceedings are conducted in an
> open, objective, and fair manner.  Indeed, public confidence in
> the judicial system is especially significant where a defendant
> accused of a violent felony is not tried because he was found
> incompetent.

*Guerrero*, 693 F.3d at 1001-02 ("As the experience and logic factors are both

met, the district court did not clearly err in finding a qualified First

Amendment right of access to mental competency hearings.").

No obvious compelling interest justifies universal sealing of all

competency evaluations.  And alternatives to possible limited concerns

exist—*e.g.*, case-by-case review, redacting particularly sensitive

information, or providing access only in the courthouse (not through

PACER).  By automatically sealing competency evaluations without any

notice, opportunity for the public to object, or judicial findings to justify the

sealing or consider alternatives, Criminal Local Rule 5.2(a)(8) is clearly

erroneous as a matter of law and inconsistent with principles of right and

justice.

29

## H. The Public Has a Qualified Right of Access to Sentencing Filings Regarding Defendant Cooperation.

Criminal Local Rule 5.2(a)(9) automatically seals "filings setting forth the substantial assistance of Defendant in the investigation or prosecution of another person pursuant to U.S. Sentencing Guidelines § 5K1.1, Fed. R. Crim. P. 35, or 18 U.S.C. § 3553(e)."[11]  Appx. at 13.  This Court has recognized that cooperator-related sentencing proceedings are subject to a qualified right of public access.  *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985) (Rule 35 motion); *accord United States v. Doe*, 870 F.3d 991, 1002 (9th Cir. 2017) (assuming right to 5K1.1 documents); *United States v. Doe*, 269 Fed. Appx. 626, 626 (9th Cir. 2008); *see also United States v. Eppinger*, 49 F.3d 1244, 1252-53 (7th Cir. 1995) (5K1.1 motion); *cf. In re Copley Press, Inc.*, 158 F.3d 1022, 1028-29 (9th Cir. 2008) (cooperation addendum in

---

[11] The District of Alaska, District of Montana, and Western District of Washington also have local rules that require cooperator-related sentencing filings be automatically sealed.  D. Alaska Crim. L.R. 32.1(f); D. Mont. Crim. L.R. 49.3(a)(2)(E); W.D. Wash. Crim. L.R. 55(b)(9). The Southern District of California and Eastern District of Washington have filing procedures (not local rules) that appear to deny public access to cooperator-related sentencing filings.  S.D. Cal. Electronic Case Filing Administrative Policies and Procedures Manual, § 2.p(8) at 19; E.D. Wash. Procedures for the Filing of Sealed and Ex Parte Documents for Criminal Defense Counsel at 2, 10, 12-14.

plea agreement); *Oregonian Publ'g*, 920 F.2d at 1467 (plea agreement discussing cooperation).

In *Doe*, this Court addressed at length the serious risk that exists in some cases for cooperators whose cooperation may be exposed by court filings, especially in a digital era. 870 F.3d at 997-98, 1001-02. The Court focused significant attention on 2016 Interim Guidance from a committee of the Judicial Conference that recommended automatic sealing for certain filings that indicate a criminal defendant's cooperation. Comm. on Court Admin. & Case Mgmt. of the Judicial Conf., *Interim Guidance for Cooperator Information* (June 30, 2016). As the *Doe* court observed, however, the 2016 Interim Guidance "correctly recogniz[ed] that a presumption of closure for all court filings would not be consistent with [Ninth Circuit] case law." *Doe*, 870 F.3d at 1002.

After *Doe*, in December 2017, the Judicial Conference's Advisory Committee on Criminal Rules refused to advance proposed rules that would implement the 2016 Interim Guidance. Among other concerns, some members "opposed a solution based on secrecy in judicial proceedings, and described the CACM amendments as shifting from the current culture of transparency to a culture of secrecy." Advisory Comm.

31

on Crim. Rules, *Report of the Advisory Comm. on Crim. Rules* (Dec. 8, 2017), *in*

Comm. on Rules of Practice & Procedure at 122 (Jan. 4, 2018).

At the same time, the Administrative Office of the United States

Courts established a Task Force on Protecting Cooperators. The

Administrative Office published the Task Force's final report and

recommendations in 2020. Admin. Office of the U.S. Courts, *Memorandum*

*Regarding Final Report of the Task Force on Protecting Cooperators* (Mar. 18,

2020). Unlike the automatic sealing proposal in the 2016 Interim Guidance,

the Task Force recommended changes that "would restore a degree of

practical obscurity to sensitive criminal case records, making the fact of a

defendant's cooperation less obvious while not unduly restricting public

access." Specifically, the it recommended removing public PACER access

to plea and sentencing records. Task Force on Protecting Cooperators,

*Final Report of the Task Force on Protecting Cooperators* at 10-15 (Aug. 2018).

A member of the public would be required to visit the courthouse public

terminals to review plea or sentencing records. *Id.* Because its proposal

involved technical, not procedural, changes, the Task Force concluded that

no rule amendments would be required. *Id.* at 20.

USDC Hawai`i could have adopted rules with some variation of the 2016 Interim Guidance or adopted the technical solutions identified by the Task Force, "as long as district courts decide motions to seal or redact on a case-by-case basis." *Doe*, 870 F.3d at 1002. But the automatic sealing of every cooperator-related sentencing filing without that case-by-case review is not consistent with this Court's precedent. *Id.* Not every defendant providing substantial assistance is cooperating against a large international drug cartel that has threatened the defendant and his family, with the Government acknowledging that "a meaningful risk of harm exists" from disclosure of the defendant's cooperation. *Compare id.* at 994-95, *with, e.g.*, *United States v. Sellers*, No. 19-CR-3, Dkt. 12 (5K1.1 motion for police officer who cooperated and testified in public corruption prosecution).

No obvious compelling interest justifies universal sealing of all sentencing filings regarding defendant cooperation. And alternatives to possible limited concerns exist—*e.g.*, case-by-case review, redacting particularly sensitive information, or providing access only in the courthouse (not through PACER). By automatically sealing cooperator-related sentencing filings without any notice, opportunity for the public to object, or judicial findings to justify the sealing or consider alternatives,

Criminal Local Rule 5.2(a)(9) is clearly erroneous as a matter of law and inconsistent with principles of right and justice.

## CONCLUSION

Based on the foregoing, the Law Center respectfully requests that that the Court invalidate the portions of the new USDC Hawai`i Criminal Local Rule 5.2 that require automatic filing under seal for all sentencing statements, (a)(2); competency evaluations, (a)(8); and sentencing filings regarding a criminal defendant's cooperation, (a)(9).

DATED:  Honolulu, Hawai`i, January 31, 2023

/s/ Robert Brian Black
ROBERT BRIAN BLACK
Attorney for Petitioner

34