IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN RE:<br><br>CIVIL BEAT LAW CENTER FOR THE<br>PUBLIC INTEREST,<br><br>              Movant.<br>_____ | CIV. NO. 23-00175 SOM–RT<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART CIVIL BEAT'S<br>MOTION TO UNSEAL THE<br>GOVERNMENT'S DOWNWARD<br>DEPARTURE MOTION |

**ORDER GRANTING IN PART AND DENYING
IN PART CIVIL BEAT'S MOTION TO UNSEAL
THE GOVERNMENT'S DOWNWARD DEPARTURE MOTION**

I.        INTRODUCTION.

Civil Beat Law Center for the Public Interest ("Civil Beat") moves for an order unsealing the Government's Motion for Downward Departure, filed in *United States v. Cullen*, Crim. No. 22–00013 SOM.  Civil Beat argues that the public right of access guaranteed by the First Amendment and by common law requires the unsealing all or most of the downward departure motion.  The Government disagrees with this premise and contends that, even if a presumption of openness were applicable here, the need to protect the safety of the defendant and the integrity of ongoing investigations must override any interest in public disclosure.

Regardless of whether a presumption of openness applies here, parts of the Government's downward departure motion are appropriate for public disclosure, while other parts should be redacted under any standard.  The court grants in part and denies in part Civil Beat's motion.

II.        BACKGROUND FACTS.

        A.    The Underlying Criminal Case.

        Ty Cullen, a former elected state legislator, was charged in 2022 with one count of Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1346.  *See USA v. Cullen*, Crim. No. 22-00013 SOM, ECF No. 1.[1]  Cullen entered a guilty plea pursuant to a plea agreement.

        Cullen assisted federal officials in ongoing investigations of others.  The parties agreed and this court found at the time of sentencing that Cullen's assistance had been substantial.  The Government moved for a sentence below the advisory sentencing guideline range pursuant to United States Sentencing Guideline (USSG) § 5K1.1, urging the court to impose a prison term between 24 and 30 months, rather than a term within the guideline range of 37 to 47 months.  *See USA v. Cullen*, Crim. No. 22-00013 SOM, ECF No. 23 (stating in Cullen's publicly available sentencing memorandum, "The government has filed a Motion for Downward Departure based on Cullen's substantial assistance . . . and the government is recommending that the court depart downward 4 levels to an offense level of 17").

        Citing the Government's recommendation, this court sentenced Cullen to 24 months in prison.  *See id.* at ECF No. 27.

─────────────

[1] Unless otherwise indicated, all references to Electronic Case Files (ECFs) refer to the docket in Civ. No. 23-00175 SOM.

**B.    Civil Beat's Motion to Unseal**.

On April 7, 2023, Civil Beat moved for an order unsealing the Government's Motion for Downward Departure filed a few weeks earlier in Cullen's criminal case.[2]  *See* ECF No. 1. Civil Beat argues that the First Amendment and common law give rise to a presumption of openness applicable in this case and that, pursuant to that presumption and the facts of this case, the court should unseal the motion completely or, at a minimum, with redactions.  *See id*.  Civil Beat concedes that, even if a presumption of openness applies here, compelling interests may override it.  *See id*. at PageID # 8-9.  However, Civil Beat argues that the downward departure motion should not have been completely sealed at the time of filing given the absence of any Government statement justifying such sealing, and that, even if the motion implicates compelling interests, a complete sealing of the document is still likely improper.  *See* ECF No. 1, PageID # 14-15.  Civil Beat suggests several alternatives to complete sealing, including redactions, limited release to a select group of persons or entities, and/or delayed release once the circumstances giving rise to any compelling interest have subsided.  *See* ECF No. 1, PageID # 14-15.

---

[2] The motion was originally filed in Misc. No. 23-00235 SOM-RT, but the court subsequently directed the Clerk's office to convert the matter to a civil case.  *See* Misc. No. 23-00235 SOM-RT, ECF No. 11.

In its response, the Government has signaled some openness to unsealing, but only with heavy redactions. *See* ECF No. 16. The Government argues that, even if a public right to access applies to USSG § 5K1.1 motions, "the facts of this case rebut any resulting presumption of openness." *See* ECF No. 16, PageID # 96 (*quoting United States v. Doe*, 870 F.3d 991, 998 (9th Cir. 2017)).

Along with its response, the Government submitted a declaration and a copy of its § 5K1.1 motion with proposed redactions. *See* ECF No. 17. While the response, which included some argument, was publicly viewable, the declaration and the proposed redactions were submitted under seal. This court promptly instructed the Government to submit an unsealed version of the proposed redactions so that Civil Beat could see what the Government was proposing to disclose. The court further instructed the Government to provide unsealed explanations for its proposed redactions that did not reveal the substance of the material the Government was arguing needed to remain sealed. The Government then filed an amended response along with its proposed redactions and explanations, which were publicly accessible. *See* ECF Nos. 19, 19-1, 19-2. The gist of the Government's position was that, no matter what standard applies, some information must remain secret to safeguard ongoing

4

investigations and to protect the defendant.  *See* ECF Nos. 19, PageID # 114–17, and ECF Nos. 19-1, 19-2.

In a reply memorandum, Civil Beat suggested that the Government has been too heavy-handed in its redactions.  *See* ECF No. 20.  According to Civil Beat, there is no basis for redacting Cullen's name from the motion or so broadly concealing the description of his assistance and cooperation.  *See* ECF No. 20, PageID # 140–46.[3]

## C.  **The Unintended Disclosure.**

Unfortunately, in submitting its amended response and proposed redactions for public viewing, the Government failed to lock in its redactions.  The redactions were electronic, and the Government's mishandling of the redactions meant that the electronically filed redacted downward departure motion was subject to a process by which persons with technical know-how could electronically undo the redactions.  This actually occurred.

The technical process and the consequence of the undoing of the redactions was described by the online news

---

[3] Civil Beat also urged the court to order the Government to provide updates to the court twice a year, so the court could continuously assess whether such broad redactions are necessary to protect ongoing investigations.  *See* ECF No. 20, PageID # 146–47.  As a result of subsequent conversations between the parties, Civil Beat is no longer requesting periodic status reports to the court by the Government, but the Government has agreed to respond to inquiries by Civil Beat about whether sealing continues to be warranted.  *See* ECF No. 23.

publication that discovered the Government's error.  That news organization is called Civil Beat, but, according to the movant in this action, Civil Beat's Law Center, the news organization operates independently of the Law Center.  (The court's understanding is that the Law Center and the online news publication were created by and with funding from the same individual and so are related at least in terms of their origins.  To avoid confusion relating to names, this court clarifies here that in referring to "Civil Beat" in this order, the court is referring to the movant in this action, not to the online news publication.)  The Government has replaced the document with the reversible redactions with a document not subject to the same reversible process.

The online news publication published an article about the Government's error and reported that, after meeting with federal prosecutors, the publication has opted not to publish the full document in its possession.  However, the publication did include in its article the text of most of Paragraph 7 of the downward departure motion.

      **D.**   **Civil Beat's Present Argument Relating to Public Disclosure.**

In a supplemental memorandum, Civil Beat argues that the online news organization's possession of the unredacted downward departure motion should lead this court to deem that motion to be subject to unsealing because it is now in public

6

hands.  *See* ECF No. 22.

**III.    LEGAL STANDARD.**

Foundational to our legal system is the principle that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process[.]" *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982).  Both the United States Constitution and the common law give effect to this principle by favoring transparency in regards to most judicial proceedings and records.  *See Doe*, 870 F.3d at 996–97.  This takes the form of a presumption of openness that courts must adopt as they consider issues of disclosure and nondisclosure of judicial records.  *See id.*  Those who seek to overcome this presumption and to close proceedings or seal records face a difficult climb, the steepness of which depends on whether the presumption derives from the Constitution or the common law.  *See United States v. Bus. of Custer Battlefield Museum & Store Located at Interstate 90, Exit 514, S. of Billings, Mont.*, 658 F.3d 1188, 1197 (9th Cir. 2011) ("The First Amendment is generally understood to provide a stronger right of access than the common law.").

Civil Beat asserts that the presumption applies to the Government's downward departure motion.  If the presumption does apply, the Government may seek to overcome it, which may raise the question of whether complete nondisclosure is justified or

7

whether a narrower alternative will suffice.  This court does not decide here which, if any, presumption applies, or what, if any, strength any applicable presumption carries here.  No matter what standard applies, this court concludes that, while total sealing is not warranted, redactions are justified.  The court nevertheless includes a discussion in this order of the underpinnings of what Civil Beat asserts is an applicable presumption, as that may be helpful to any discussion of the issues before this court.

### A.    The First Amendment Right of Public Access.

While not expressly stated in the text, the First Amendment gives rise to a "presumed right of access to court proceedings and documents." *See Oregonian Pub. Co. v. U.S. Dist. Ct. for Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990).  This presumed right applies to many, but not all, proceedings and documents.  To determine whether this constitutional right applies to a particular proceeding or record, courts evaluate whether "related considerations of experience and logic cut in favor of a First Amendment right of access[.]" *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989) (quotation marks omitted).

Applying this framework, the Ninth Circuit has held that this constitutional right of access extends to a wide range of pretrial hearings.  *See United States v. Brooklier*, 685 F.2d

8

1162, 1170 (9th Cir. 1982).  It also applies to many records associated with those proceedings.  *See Associated Press v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("the public and press have a first amendment right of access to pretrial documents in general").

The First Amendment right of public access is qualified, not absolute.  *Globe Newspaper Co.*, 457 U.S. at 606. It may be overcome by "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enterprise Co. v. Superior Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984) (*Press-Enterprise I*).

The Ninth Circuit has not yet considered whether this right applies to motions for downward departure.  *See Doe*, 870 F.3d at 997 ("neither this court nor the Supreme Court has ever specifically addressed whether the public has a qualified First Amendment right of access to written documents relating to § 5K1.1").  Currently pending before the Ninth Circuit is Civil Beat's challenge to the District of Hawaii's local criminal rule allowing certain documents in criminal cases, including downward departure motions, to be filed under seal without the need for a court order applying to a specific document.  *In re Civil Beat Law Center for the Public Interest, Inc v. USDC-HI*, No. 23-70023

(9th Cir. filed Jan. 31, 2023).  The local rule includes a reference to an unsealing process.

In cases implicating the First Amendment right of access the burden is on the party seeking closure to demonstrate that it is justified and that available alternatives will not suffice.  *Oregonian Pub. Co.*, 920 F.2d at 1467.  To succeed, the party's arguments must be based on specific facts and not merely "conclusory assertions."  *Id*. at 1466–67.

### B.   The Common Law Right of Public Access.

Proceedings and records that are not covered by the First Amendment right of access may still be covered by a right of access deriving from common law.  *In re Copley Press, Inc.*, 518 F.3d 1022, 1029 (9th Cir. 2008).  The common law right of access is a judicially created privilege recognizing "a general right to inspect and copy public records and documents, including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) (footnote omitted).

All judicial records are subject to this right of public access except for that "narrow range of documents . . . [that] have traditionally been kept secret for important policy reasons," like grand jury transcripts and preindictment warrant materials.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quotation marks omitted).

Even when the common law right applies, courts have the discretion to "balance the need for disclosure against the reasons for confidentiality." *United States v. Schlette*, 842 F.2d 1574, 1581 (9th Cir.), *amended*, 854 F.2d 359 (9th Cir. 1988). But courts must approach this evaluation with a "strong presumption in favor of access." *Kamakana*, 447 F.3d at 1178 (*quoting Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The party seeking secrecy in such cases has the burden of overcoming this presumption by articulating compelling reasons that favor disclosure. *See Custer Battlefield Museum*, 658 F.3d at 1195.

The common law standard leaves more discretion in the hands of the court and does not tip the balance as heavily in favor of transparency as the First Amendment does. Thus, the presumption of openness may be stronger under the First Amendment than under the common law.

Even in the absence of a First Amendment or common law right of public access, a court sometimes has the discretion to determine which judicial records are disclosed and which are sealed. In the District of Hawaii, this discretion is recognized in Local Criminal Rule 5.2(b)(4), which was adopted under Rule 57 of the Federal Rules of Criminal Procedure

## C.   Overriding the Right of Public Access.

The presumption of openness looks different in the First Amendment and common law contexts, but in either case, a party can overcome any presumption by showing that compelling reasons counsel against disclosure.  One of the interests that most frequently justifies sealing, in both contexts, is protecting the integrity of ongoing investigations.  *See e.g.*, *United States v. Doe*, 870 F.3d at 1000 (addressing the First Amendment right of access); *Lopez v. United States*, No. 13-CV-03793, 2015 WL 2120514, at *2 (N.D. Cal. May 5, 2015) (addressing the common law right of access)*; see also United States v. Joseph*, No. CR.06-0080, 2008 WL 2511726, at *1 (D. Haw. June 20, 2008) ("If, for example, a filing details an ongoing investigation, the court will allow that filing to be sealed."); *United States Dep't of Just. v. Am. C.L. Union Found.*, 812 F. App'x 722, 724 (9th Cir. 2020) ("any presumption in favor of access would be outweighed by a compelling government interest in maintaining secrecy in an ongoing investigation").

It is not enough to merely mention an ongoing investigation to justify sealing.  *See*, *e.g.*, *In re Civ. Beat L. Ctr. for Pub. Int.*, No. 21-MC-00298, 2021 WL 4898660, at *3 (D. Haw. Oct. 14, 2021) (unsealing a plea agreement despite the defendant's claim that doing so would interfere with ongoing investigations).  Courts are especially unlikely to find this

rationale convincing when the information sought to be sealed has already been publicly disclosed. *See*, *e.g.*, *United States v. Suppressed*, No. 16 MC 261, 2019 WL 1077148, at *2 (N.D. Ill. Mar. 7, 2019) (concluding that the threat to ongoing criminal investigations did not justify sealing a search warrant affidavit because the materials in the affidavit were extensively discussed by the media); *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) ("those recorded through defendant's assistance can infer who they are by information that is publicly available and by their own knowledge of contacts with Huntley"); *United States v. Gonzalez*, 927 F. Supp. 768, 778 (D. Del. 1996) (granting the motion to unseal in part because there was little risk of endangering ongoing investigations given that they were "already in the public domain").

Another frequent justification for overriding the public right of access is to protect the defendant or others from harm. *See*, *e.g.*, *Doe*, 870 F.3d at 1000 (addressing the First Amendment right of access); *In re Copley Press*, *Inc.*, 518 F.3d at 1029 (addressing the common law right of access). But here too bare allegations are insufficient; the record must reveal a substantial probability that such harm will actually occur. *See Oregonian Pub. Co.*, 920 F.2d at 1467-68 (ruling against overriding the presumption of openness when the alleged safety concerns were not substantiated by "any factual finding"); *see,*

*e.g.*, *Phoenix Newspapers, Inc. v. U.S. Dist. Ct. for Dist. of Ariz.*, 156 F.3d 940, 950 (9th Cir. 1998) (disapproving of a lower court's decision because it did not "specifically explain the necessary connection between unsealing the transcript and inflicting irreparable damage upon the security concerns it invoked as a compelling interest").

In evaluating these purported rationales for overriding the public right of access, courts must give some measure of deference to the Government's assessments. *See Doe*, 870 F.3d at 999 ("[i]t is the government that is in the position to know the effects of defendants' provided information") (*quoting United States v. Ressam*, 679 F.3d 1069, 1092–93 (9th Cir. 2012)) (brackets in original). The court errs if it disregards the Government's reasonable appraisal of the risks attendant to disclosure. *See id*. at 998–1001.

### D. **Alternative Remedies.**

When courts conclude that compelling interests override public rights of access, they still must consider whether any remedies narrower than complete sealing are available. *Brooklier*, 685 F.2d at 1169; *see also Press-Enterprise I*, 464 U.S. at 513 (vacating a lower court decision because it reflected "a failure to consider alternatives to closure and to total suppression of the transcript"). The most common alternative to complete sealing is redaction. *See Custer Battlefield Museum*,

14

658 F.3d at 1194 (indicating that redaction, rather than complete disclosure, should be used, when possible, in cases implicating the common law right of access).

Another alternative is limited release, with a court making records available to only certain persons along with an agreement about how and when those persons can disclose the information in issue. *See, e.g.*, *Brooklier*, 685 F.2d at 1173 (indicating that a "voluntary agreement by the media as to scope and timing of coverage" was an obvious alternative to continuing complete closure of the transcripts). Yet another option is delayed release, with the court delaying unsealing until a later date. *See, e.g.*, *In re Civil Beat Law Ctr. for the Public Interest*, No. 22-MC-286, ECF No. 23, PageID # 617-18 (D. Haw. Nov. 17, 2022) (requiring biannual reports from the Government to assess whether circumstances have changed such that further disclosure of records is warranted); *see also* Hannah Bloch-Wehba, *Exposing Secret Searches: A First Amendment Right of Access to Electronic Surveillance Orders*, 93 Wash. L. Rev. 145, 152 (2018) ("While the right of access might be overcome while an investigation is pending and surveillance is ongoing, changes in circumstances likely allow the applications and orders to become public later in time.").

15

IV.     **ANALYSIS.**

        **A.   The Court Will Not Disclose the Entirety of the Motion.**

        The Government accidentally filed a copy of its downward departure motion with reversible redactions, making the complete contents of the motion publicly available for a brief time.  Under certain circumstances such an error would warrant a complete unsealing of the Government's motion. *See, e.g., Forbes Media LLC v. United States*, 548 F. Supp. 3d 872, 881–82 (N.D. Cal. 2021), *aff'd*, 61 F.4th 1072 (9th Cir. 2023) (denying the Government's request to seal a judicial record that the Government had already erroneously made public).  However, such an extreme remedy is neither necessary nor prudent under the circumstances of this case.

        Civil Beat expressly recognizes, even following the accidental disclosure of the downward departure motion, that narrowly targeted redactions are appropriate if necessary to protect ongoing investigations. *See* ECF No. 22, PageID # 153.

        With respect to the downward departure motion before this court, the only member of the public known to this court to have viewed the briefly unsealed document is an online news publication.  That entity has published most of Paragraph 7 of the downward departure motion but has stated that it will not reveal further details from the motion. *See* Patti Epler, *The*

16

*Investigation Into Public Corruption In Hawaii Is Very Much Alive*, Honolulu Civil Beat (May 5, 2023), https://www.civilbeat.org/2023/05/the-investigation-into-public--corruption-in-hawaii-is-very-much-alive/ ("we've decided not to disclose most of the details the court filing contains").

This unique situation distinguishes this case from those in which the relevant information was shared widely with the general public. *See, e.g.*, *United States v. Suppressed*, No. 16 MC 261, 2019 U.S. Dist. LEXIS 36565, at *7 (N.D. Ill. Mar. 7, 2019) (departing from the usual practice of sealing search warrant affidavits because the particular affidavit at issue was accidentally made available to the public and covered extensively by a local newspaper); *cf*. *ProtectMarriage.com - Yes on 8 v. Bowen*, 752 F.3d 827, 835 (9th Cir. 2014) (denying as moot the appellants' request for an injunction in part because the records they sought to conceal "ha[d] been accessed and republished by third parties"). In the present case, most of the cat has not been let out of the bag. Ongoing investigations can still be protected.

      **B.    Redaction is Proper Here and Can Adequately Protect Ongoing Investigations**.

Regardless of whether a presumption of openness applies here, or of the strength of any presumption, the court concludes that redaction is the proper way to balance the public's interest in transparency with the clear importance of safeguarding ongoing

investigations.  *Cf. Press-Enterprise* I, 464 U.S. at 513 ("The trial judge should seal only such parts of the transcript as necessary to preserve the anonymity of the individuals sought to be protected.").

In some cases, redaction is not an option because any amount of disclosure would pose a risk to the defendant's safety. *See, e.g.*, *Doe*, 870 F.3d at 1001 ("Redacting portions of the motions . . . would not sufficiently protect Doe.  In fact, under the circumstances here, doing so would . . . result in docket entries that readily signal Doe's cooperation.").  That is not the case here.  Unsealing a redacted version of the downward departure motion will not meaningfully affect access to information about Cullen's cooperation.

Cullen's cooperation has already been covered widely by the media, having been openly discussed at his sentencing hearing.  *See*, *e.g.*, Daryl Huff, *Ex-lawmaker in bribery scandal gets leniency for cooperating with FBI in separate probes*, Hawaii News Now, (April 6, 2023), https://www.hawaiinewsnow.com/2023/-04/07/bribed-ex-lawmaker-gets-lower-sentence-reward--cooperating-with-fbi-separate-probes/ ("Assistant U.S. Attorney Ken Sorenson said Cullen began cooperating immediately after his arrest"); Blaze Lovell, *Ex-Hawaii Lawmaker Gets 2 Years In Prison For Taking Bribes*, Honolulu Civil Beat (April 6, 2023), https://www.civilbeat.org/2023/04/ex-hawaii-lawmaker-gets-2-years-in-prison-for-taking-bribes/ ("Former Rep. Ty Cullen's sentence was

18

reduced for providing assistance to the federal government in an ongoing investigation involving public corruption.").

At the hearing on the motion to unseal, the Government argued that its unintended disclosure to an online news entity was of little import because the entity allegedly has a low circulation.  This court invited the Government to submit case authorities for the proposition that a court should weigh circulation figures when considering an unsealing motion.  The Government provided no such authority.  Even if circulation matters, the court has no basis for concluding that it supports continued sealing.  The online news entity appears to have over 7,500 paying members, over 35,000 Instagram followers, and over 5 million web visitors each year.  *See* Courtney Teague, *A Look Back At 2022: See Civil Beat's Top Stories*, Honolulu Civil Beat (Dec. 30, 2022), https://www.civilbeat.org/2022/12/a-look-back-at--2022-see-civil-beats-top-stories/; Honolulu Civil Beat (@CivilBeat), Instagram, https://www.instagram.com/civilbeat/-?hl=en (last visited May 15, 2023).

Moreover, any internet posting could at least potentially be widely available.  *Cf. Doe No. 1 v. Reed*, 697 F.3d 1235, 1239-40 & n.2 (9th Cir. 2012) ("We doubt, because of the information's availability on the internet, that enjoining further disclosure by the parties will narrow any further dissemination.") (quotation marks and brackets omitted).

And the court cannot overlook Cullen's discussion of
his cooperation in his publicly available sentencing memorandum.
*See United States v. Cullen*, Crim. No. 22-00013, ECF No. 23,
PageID # 139 ("Cullen's substantial assistance to the Government
was immediate, valuable and lasted for over one year.").  At the
hearing on the motion to unseal, the Government minimized the
disclosures in Cullen's sentencing memorandum, arguing that a
downward departure motion, above all other judicial records, puts
a cooperator at risk.  To substantiate this, the Government cited
the Interim Guidance for Cooperator Information from the
Committee on Court Administration and Case Management of the
Judicial Conference of the United States (CCACM) Report.  But the
report does not actually single out downward departure motions as
posing greater risks than other documents establishing
cooperation.  Rather, the report says that any documents
associated with USSG § 5K1.1 can put cooperators at risk.  *See*
CCACM Report, Interim Guidance for Cooperator Information (June
30, 2016), http://www.uscourts.gov/sites/default/files/2016-09--
criminal-agenda_book_0.pdf.

Having determined that the motion should not remain
entirely sealed, the court concludes that, in this case,
redaction is the best remedy, while limited or delayed release
will make little sense.  Limited release is impractical here.
Any parts of the motion that are suitable to disclose to Civil

20

Beat are also safe to release publicly.  Similarly, in cases like this one, with the media demonstrating an interest in timely reporting, a delay is not likely to be a suitable remedy.  *Cf. Courthouse News Serv. v. Forman*, 606 F. Supp. 3d 1200, 1209 (N.D. Fla. 2022) (finding the court's delayed publication of civil complaints to be unconstitutional in part because "[s]uch delays seriously hamper Plaintiff's ability to report on lawsuits in Broward County").

> **C.    Information That the Government Provided Without Redaction in the Record Will Be Unredacted in the Unsealed Motion.**

The court begins by ruling that all information that the Government has not expressly proposed to redact from the downward departure motion, *see* ECF Nos. 19-1 and 19-2, is suitable for disclosure.  The release of this information is not likely to jeopardize ongoing investigations or threaten the defendant's safety.

> **D.    The Court Need Not Determine What, if Any, Presumption Applies Here, or the Strength of Any Such Presumption of Openness, Before Deciding Which Parts of the Motion May Be Redacted.**

Regardless of whether a presumption of openness applies under either the First Amendment or common law, the court redacts the downward departure motion given the compelling interests in issue, but the court narrowly tailors the redactions.

There is no question that compelling interests are implicated here.  The Government shows that some measure of redaction is needed to ensure against serious harms.  As discussed in Section III, threats to ongoing investigations are paradigmatic governmental interests that can override even the First Amendment's robust presumption of openness.  Accordingly, to the extent the Government has shown that disclosure of certain portions of the downward departure motion would have a substantial probability of harming ongoing investigations, the court permits redaction of those portions of that motion.  At the hearing on the motion to unseal, Civil Beat agreed that redaction is prudent in such circumstances.

There are other portions of the Government's motion that should be disclosed regardless of which standard applies because disclosure creates no risk of jeopardizing ongoing investigations or the defendant's safety.  In the interest of transparency, the court orders disclosure of those portions of the unsealed motion.

E.    **Proposed Redactions.**

*Case Number, Defendant Name, and Sentencing Date.*[4]

The Government urged the court to redact the case number, the defendant's name, and the sentencing date from the downward departure motion.  According to the Government, this would make it harder for people, particularly prisoners, to link Cullen with the downward departure motion and to discern that he cooperated.  *See* ECF No. 19, PageID # 116–17.  During the hearing on the motion to unseal, the court ruled that these pieces of information were not to be redacted.

With regards to the case number, the court explained during the hearing on the motion to unseal that, in this district, a computer-generated header including the case number appears on every page of any filing, sealed or unsealed.  The Government's proposed redaction of the case number appeared to affect only the case number that the Government had typed into the document, not the computer-generated header.  Such a redaction would elevate form over substance.  At the hearing, the Government then asked that the computer-generated header be also redacted, but the court expressed concern that such a redaction could make locating a document difficult.  At heart, the

---

[4] At the hearing on the motion to unseal, when asked whether he was concerned about disclosure of the case number, the defendant's name, and the sentencing hearing date, counsel for Cullen said he had no problem with disclosure of this information.

Government appears to be guided by the thought that it is advantageous to make information that is already public difficult to find.  The Government does not show that such an approach to sealing is grounded in law.

As for Cullen's name, the Government has not shown that Cullen faces a particularized threat of danger that would be reduced or avoided through redaction.  Defendant safety is indisputably a compelling interest.  But it is not enough for the Government to simply allege that disclosure will harm the defendant.  Rather, the Government must substantiate its allegations by providing "specific factual findings," not just "conclusory assertions."  *Oregonian*, 920 F.2d at 1466.

The record contains no specific factual findings on this point.  The evidence the Government presents of threats to Cullen's safety, like the CCACM Report, applies equally to all cooperators.  While the Government need not show "specific threats" to make Cullen's safety an issue in this case, *Doe*, 870 F.3d at 999, it must at least show that disclosure would heighten the threats to his personal safety.  *See Phoenix Newspapers, Inc.*, 156 F.3d at 950 (disapproving of a lower court's decision because it did not "specifically explain the necessary connection between unsealing the transcript and inflicting irreparable damage upon the security concerns it invoked").

24

In *United States v. Doe*, the Ninth Circuit stated that it is error for a court to require a party moving to seal a judicial record to present evidence of "specific threats" of harm.  *Id*.  But *Doe* also recognized the importance of particularized facts demonstrating that a party would face a heightened risk of harm if information were disclosed.  *Id*. ("the district court's conclusion that the risks to Doe and his family were speculative is contradicted by the evidence in the record about Doe's involvement with a wealthy, international cartel that threatened his family if he played dirty") (quotation marks and alterations omitted).

The generic evidence provided by the Government does not adequately demonstrate that disclosure would likely result in harm to Cullen.  The court adds to that concern the widespread news coverage of Cullen's cooperation.  Given these circumstances, this court concludes that the record does not support redaction of Cullen's name from the downward departure motion.

Nor does the court see any reason to redact the date of the sentencing hearing.  The date is in the public record.

*Paragraph 1, Sentence 1: After "arrest" to the comma.*

The Government proposes redacting this portion of the downward departure motion, which details the date of Cullen's arrest, because its disclosure would shed light on when his

cooperation began.  The court agrees.  The record already makes clear that Cullen's cooperation began immediately after his arrest.  *See United States v. Cullen*, Crim. No. 22-00013 SOM, ECF No. 23, PageID # 139 ("Cullen's substantial assistance to the Government was immediate, valuable and lasted for over one year."); ECF No. 19-1, PageID # 120 ("the Defendant immediately became cooperative").  The arrest date is not included in the public record, and disclosure of the date would allow others to infer when his cooperation began.  That, in turn, would shed light on the scope of the investigation and possibly alert persons being investigated.  As a result, the court permits redaction of this information in the interest of protecting the integrity of ongoing investigations.  *See U.S. Dep't of Just. v. Am. C.L. Union Found.*, 812 F. App'x 722, 724 (9th Cir. 2020) ("any presumption in favor of access would be outweighed by a compelling government interest in maintaining secrecy in an ongoing investigation").

> *Paragraph 1, Sentence 2: From the comma to the period.*

The Government seeks redaction of this portion of the downward departure motion, presumably because its disclosure would reveal sensitive information about the direction of the investigation.  The court agrees.  Disclosure of this information would likely reveal sensitive information about the direction of ongoing investigations.  *See Ressam*, 679 F.3d at 1092-93 ("It is

the government that is in the position to know the effects of
defendants' provided information").

*Paragraph 1, Sentence 3: After "conduct" to the period.*

In ECF No. 19-2, the Government proposes this redaction
in the interest of protecting the ongoing investigation and
ensuring the defendant's safety.  However, the Government failed
to redact the words in issue from ECF No. 19-1, which, like ECF
No. 19-2, was filed in a publicly viewable format days ago.  *See*
ECF No. 19-1, PageID # 120.  At this point, it makes no sense to
redact these words from future filings.  *See Kamakana*, 447 F.3d
at 1184 (affirming an unsealing order in part because the
Government revealed the very information it sought to redact);
*see also Copley*, 518 F.3d at 1025 ("Once information is
published, it cannot be made secret again.").

*Paragraph 2, Sentence 1.*

The Government proposes a complete redaction of this
sentence.  The court will instead redact a limited portion of it.
The first seven words of the sentence reveal nothing that has not
already been revealed.  Thus, those words present no risk of
undermining ongoing investigations.  *See Gonzalez*, 927 F. Supp.
at 778 (noting that when information is "already in the public
domain," there is less of a basis to argue that its disclosure
would harm ongoing investigations).

The remainder of the sentence includes sensitive information about investigative methods that has not been previously disclosed.  The court agrees that that remainder may be redacted.  *Cf. Forbes Media LLC v. United States*, 61 F.4th 1072, 1080 (9th Cir. 2023) (ruling against unsealing in part because doing so would "expose sensitive law-enforcement techniques and endanger active criminal investigations").

### *Paragraph 2, Sentence 2: Up to the first comma.*

The Government proposes complete redaction of this clause.  The court agrees except with respect to a single preposition.  The Government redacted the preposition that is the first word of this sentence in ECF No. 19-1, but allowed the public to see the preposition in ECF No. 19-2.  *Compare* ECF No. 19-1, PageID # 120 *to* ECF No. 19-2, PageID # 134.  The court therefore orders disclosure of that preposition, while permitting redaction of the remainder of the clause, up until the first comma, because disclosure would undermine ongoing investigations.

### *Paragraph 2, Sentence 3.*

The Government proposes complete redaction of this sentence.  The court agrees.  The entirety of this sentence includes case-specific information and sensitive investigative techniques.

*Paragraphs 3 to 6.*

The Government proposes complete redaction of these paragraphs.  Typically, the court would try to avoid such a large redaction, given the public's interest in transparency.  But here, under the particular circumstances of this case, redacting these paragraphs in their entirety is necessary to avoid divulging sensitive investigation-related information.

The Government has demonstrated to the court that outright redaction of these paragraphs is required to safeguard law enforcement's techniques and to protect ongoing investigations.  These paragraphs in their entirety involve sensitive, often case-specific, information.  Disclosing these details would, more than likely, harm investigative processes.

Civil Beat urges the court to disclose any information in these paragraphs that can be revealed without jeopardizing investigations.  *See* ECF No. 20, PageID # 144-46.  Civil Beat argues that the court can likely disclose certain details (about run-of-the-mill investigative techniques, for example, or meetings between Cullen and law enforcement) without causing damage to ongoing investigations.  *Id*.  But that is simply not the case.  These paragraphs are packed with case-specific information that speaks directly to the nature and scope of ongoing investigations, as well as the use of certain investigative techniques.  Indeed, the online news publication

29

apparently agreed, choosing not to publish information from these paragraphs.  *See* Patti Epler, *The Investigation Into Public Corruption In Hawaii Is Very Much Alive*, Honolulu Civil Beat (May 5, 2023), https://www.civilbeat.org/2023/05/the-investigation--into-public-corruption-in-hawaii-is-very-much-alive/.  They contain no information suitable for public disclosure.

> *Paragraph 7.*

The parties have arrived at a stipulation concerning Paragraph 7, which the court here adopts.  Paragraph 7 will be disclosed, with the exception of the fourteenth, fifteenth, and sixteenth words in the first sentence, and the eleventh word in the second sentence.

**V.        CONCLUSION.**

The court directs the Government to prepare an unsealed version of the motion for downward departure, redacted only as permitted by this order.  This new version of the downward departure motion shall be filed in both this action and in Crim. No. 22-00013.

Once the new version of the downward departure motion has been filed, the Clerk of Court shall enter partial judgment for Civil Beat consistent with this order and shall then close this civil action.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 17, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*In re Civil Beat Law Center for the Public Interest*, Civ No. 23-00175 SOM-RT; ORDER GRANTING IN PART AND DENYING IN PART CIVIL BEAT'S MOTION TO UNSEAL THE GOVERNMENT'S DOWNWARD DEPARTURE MOTION.